UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID F., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-733-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff David F. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 22).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 19, 20. Plaintiff also filed a reply brief. *See* ECF No. 21. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 19) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 20) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on June 13, 2016, alleging disability beginning February 28, 2015 (the disability onset date), due to epilepsy and allergies.

Transcript ("Tr.") 232-35, 236-43, 285. The claims were denied initially on September 13, 2016, after which Plaintiff requested a hearing. Tr. 10. On March 8, 2019, Administrative Law Judge Mary Sparks (the "ALJ") presided over a video hearing from Albany, New York. Tr. 10 Plaintiff appeared and testified from Buffalo, New York, and was represented by Zachary Zabawa, an attorney. *Id*. Carol O. Mosley, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on April 18, 2019, finding that Plaintiff was not disabled. Tr. 10-20. On April 15, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's April 18, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 18, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020;

2. The claimant has not engaged in substantial gainful activity since February 28, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: degenerative changes of the thoracic spine; epilepsy, controlled; disc herniation C5-6 and straightening of the cervical spine; right carpal tunnel syndrome; right hand tenosynovitis; bipolar disorder; depression, anxiety, attention deficit/hyperactivity disorder ("ADHD"), and obesity (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except that he can never climb ladders, ropes, or scaffolds; he can no more than occasionally climb ramps or stairs; he must avoid use of moving machinery and unprotected heights; he is limited to performing simple, repetitive jobs defined as those having no more than 1 to 2 tasks as set defined by the U.S. Department of Labor Employment and Training Administration in the Revised Handbook for Analyzing Jobs; and he is limited to low stress jobs, defined as those having no more

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

than occasional decision-making required and no more than occasional changes in the work setting;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on September 13, 1991 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2015 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 10-20.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on June 13, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 20. The ALJ also determined that based on the application for supplemental security benefits protectively filed on June 13, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## ANALYSIS

Plaintiff asserts a single point of error, challenging the ALJ's RFC finding. *See* ECF No. 19-1 at 22-29. Plaintiff argues that, in reaching the physical and mental RFC findings, the ALJ did not evaluate some opinions from treating neurologist Robert Glover, M.D. ("Dr. Glover"), treating chiropractor Kenneth Kurbs, D.C. ("Dr. Kurbs"), Nurse Practitioner Joseph Gross ("NP Gross"),

primary care physician ("PCP") Dr. John Bauers, M.D. ("Dr. Bauers"), and Physician Assistant Gregory Groth ("PA Groth"). *See id*. at 22. Plaintiff acknowledges that the ALJ discussed some opinions from Dr. Glover, Dr. Kurbs, and PA Groth (Tr. 17-18, 757-760, 762-765, 856-860), but asserts that remand is required because she did not discuss others (Tr. 848-849, 840-841, 836-837), and entirely overlooked opinions from Dr. Bauers and NP Gross (Tr. 774-775, 861-864). *See* ECF No. 19-1 at 23-26.

The Commissioner argues in response that the ALJ reasonably determined that, based on the treatment notes, Plaintiff's activities of daily living and multiple medical opinions, that Plaintiff retained the capacity for a range of light work, and the ALJ's failure to mention every opinion in the record does not justify remand. *See* ECF No. 20-1 at 6.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ adequately considered the evidence of record, including the medical opinion evidence, the treatment notes, the objective findings, and Plaintiff's subjective complaints, and her RFC determination was supported by substantial evidence.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the

ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the

RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at \*3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at \*4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. While Plaintiff faults the ALJ for not discussing every medical source statement, the ALJ was not required to do so. First, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")).

Furthermore, as discussed further below, the ALJ discussed a multitude of opinions, as well as non-opinion evidence, in support of her physical and mental RFC findings. While the ALJ did not explicitly recite each opinion contained in the administrative record, the fact that she did not does not mean that she did not consider it, particularly when she explicitly stated in the decision that she considered "all the evidence." Tr. 11. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered") (internal quotation marks and citations omitted)); *see also Cichocki v. Astrue*, 729 F.3d 172, 176-77 (explaining that where the evidence of record permits the court to glean the rationale of an ALJ's decision, an ALJ need not recite every piece of evidence that contributed to the decision); *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (citing *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Furthermore, a review of those opinions reveals that they would not have changed the outcome of the case. Thus, even if the ALJ had erred in not considering the opinions, any error

is harmless. *See Zabala v. Astrue*, 595 F.3d at 410 (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).

In evaluating plaintiff's physical RFC, the ALJ first discussed Plaintiff's treatment notes and his activities of daily living. The ALJ then evaluated the medical opinions and explained why she accorded more weight to the opinions that were consistent with the record as a whole and less weight to the rest. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (holding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment, and rejecting the argument that a medical opinion was required); *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC).

Specifically, the ALJ noted that the objective findings pertaining to Plaintiff's musculoskeletal impairments revealed that he walked with a normal or "well-balanced" gait; he had no difficulty rising from his chair; and he used no assistive walking device. Tr. 16, 406, 617, 621, 884, 958, 1060, 1063, 1070, 1073, 1076, 1079, 1107, 1110. Plaintiff also had full motor strength, normal reflexes, intact sensation, and negative straight leg raising. Tr. 406-07, 617, 622, 958, 1063-64, 1070, 1079, 1107, 1110. The ALJ noted that an MRI of Plaintiff's cervical spine revealed disc herniation at C5-6 but "no significant stenosis" (Tr. 546); an MRI and x-rays of his thoracic spine showed only "mild" curvature and "mild" degenerative changes (Tr. 618, 646, 740, 957); an MRI of the lumbar spine revealed no herniation or stenosis (Tr. 957); and an electrodiagnostic study from May 2018 showed evidence of possible bilateral SI radiculopathy but no definitive diagnosis and no evidence of right lumbosacral plexopathy, lower extremity

mononeuropathy, polyneuropathy, or denervation in the right lower extremity (Tr. 956-57). Tr. 15-16.

The ALJ also noted that treatment records revealed that Plaintiff's treating sources recommended "conservative care." Tr. 15, 555, 622. A pattern of conservative treatment weighs against complaints of disabling symptoms. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (holding that it is proper for an ALJ to cite a claimant's conservative treatment history to support his conclusion that he or she is not disabled); *Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that her treatment was essentially routine and conservative, consisting of medication management and physical therapy). The ALJ also observed that Plaintiff described his pain symptoms as "mild" and stated that his symptoms were improving through physical therapy. Tr. 16, 566-67, 569, 653. Improvement with treatment is a proper factor for the ALJ to consider in determining disability. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished) (improvement with treatment is properly considered in concluding claimant not disabled); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function). In addition, there is no evidence of any hospitalizations or surgeries, or any need for acute care for Plaintiff's musculoskeletal complaints.

The ALJ also considered the evidence related to Plaintiff's seizures. Tr. 16. The ALJ noted that while Plaintiff was diagnosed with epilepsy, his last seizure took place nearly two years prior, in May 2017, and was attributed to a change in medication. Tr. 16, 498, 629. After Plaintiff's medication was changed again, treating neurologist Dr. Glover, noted that, "from an epilepsy perspective he is doing quite well." Tr. 16, 501. Other than this seizure episode, treatment records

confirm that in December 2016 plaintiff advised treating sources that "he has not had a seizure in two years," which is around the time of a confirmed seizure in February 2015. Tr. 16, 505, 558. Prior to that, Plaintiff had not had a seizure since 2010. Tr. 16, 538. Thus, treatment records confirm that Plaintiff's seizure impairment was well-controlled, and his seizures were infrequent. Nevertheless, the ALJ accounted for this impairment in the RFC finding by restricting Plaintiff to work that did not require exposure to moving machinery and unprotected heights. Tr. 14. Similarly, with respect to Plaintiff's complaints of daily migraines, treatment records show that these have been treated with a trigger point injection, which resulted in "immediate relief." Tr. 16, 495, 615, 713.

The ALJ also noted that Plaintiff's allegations of limitations from his headaches, seizures, or his musculoskeletal complaints, were undermined by his high-functioning activities of daily living. Tr. 12, 17. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)). In particular, the ALJ noted evidence in the record establishing that Plaintiff has a relatively active lifestyle, including leading a youth group and serving as a trustee at his church. Tr. 17, 1072. Plaintiff also admitted to doing "hard physical work at the church every day," including helping to lift heavy objects. Tr.17, 653, 1072. He also reported "exercising sporadically" and walking every day. Tr. 17, 1072, 1117. He shopped (Tr. 296) and prepared simple meals (Tr. 297); he also reported going to the bar, to the movies, and to the mall but "not often because of [his] job" (Tr. 298). Thus, the ALJ appropriately found

that Plaintiff's wide range of daily activities are consistent with an ability to do light work. Tr. 14. *See Cichocki*, 729 F.3d at 178 (holding that the ALJ properly considered the claimant's reported daily activities, such as walking her dog and cleaning her house, in support of an RFC finding for light work); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible); *see Ortiz v. Saul*, No. 1:19-cv-00942 (ALC), 2020 WL 1150213, at *1 (S.D.N.Y. Mar. 10, 2020) ("Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry . . . support[s] a light work RFC finding.").

The ALJ also noted that Plaintiff worked for part of the relevant period. Tr. 17. Plaintiff regularly reported working, including working two jobs simultaneously (at a retail game store and as the manager on the overnight shift at a gas station) during the time he alleged he could not work. Tr. 295, 298, 388, 419, 454, 505, 1067. This work activity, while not substantial gainful activity, nonetheless undermines Plaintiff's allegation of disability. *See* 20 C.F.R. §§ 404.1571, 416.971 (explaining that even if the work a claimant had done was not substantial gainful activity, it may show that the claimant can do more work than he actually did); *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (noting that while claimant's work during the relevant period did not meet the threshold for substantial gainful activity, he worked at levels consistent with light work); *Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *19 (W.D.N.Y. Dec. 23, 2014) (finding that the ALJ appropriately discredited claimant's allegations in part because he worked after his alleged disability onset date).

As noted above, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino*, 312 F.3d at 588. In this case, the ALJ also considered the opinions in the record and gave more weight to those he found were consistent with the record as a whole. Tr. 17. For

example, the ALJ gave significant weight to the opinion of neurologic consultative examiner David Brauer, M.D. ("Dr. Brauer"), who examined Plaintiff on August 24, 2016. Tr. 405-08. Dr. Brauer assessed that Plaintiff had no limitations in his ability to sit, stand, walk, climb, push, pull, or carry heavy objects. Tr. 407. Dr. Brauer opined, however, that Plaintiff should avoid unprotected or unrestricted heights due to his history of seizures (Tr. 407), an opinion that the ALJ incorporated into the RFC finding by restricting Plaintiff to work that did not require exposure to unprotected heights. Tr. 14. The ALJ explained that he gave significant weight to Dr. Brauer's opinion because it was consistent with the medical evidence, which, as discussed above, showed conservative treatment and generally benign findings. Tr. 17. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that medical opinion").

The ALJ also found that Dr. Brauer's opinion was consistent with the June 20, 2018 opinion of Dr. Glover, Plaintiff's treating neurologist, to which the ALJ also gave significant weight. Tr. 17, 763-65. Dr. Glover opined that Plaintiff's neurological impairments would not require additional supervision at work; would not require him to take any unscheduled breaks during the day; and were not likely to produce "good days" or "bad days." Tr. 763-65. Dr. Glover further opined that Plaintiff should not work from heights and should not operate power machinery, and he should be limited to low stress jobs, limitations which the ALJ incorporated into the RFC finding. Tr. 14, 764-65. The ALJ explained that she gave significant weight to Dr. Glover's opinion because it was consistent with the opinion of Dr. Brauer, as well as consistent with Plaintiff's treatment notes. Tr. 17. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Plaintiff faults the ALJ for not discussing an earlier opinion from Dr. Glover dated January 2, 2018, wherein Dr. Glover assessed that Plaintiff had no limitation in walking, standing, and

sitting; and moderate limitation in lifting and carrying. *See* ECF No. 19-1 at 24-25 (citing Tr. 840-41). However, Dr. Glover's opinion about Plaintiff's physical abilities was fully consistent with the medical record as a whole, which showed that Plaintiff had no demonstrable physical limitations as a result of his combined physical impairments and indicates that he was capable of light work, which provides further support for the ALJ's physical RFC finding Tr. 14, 17. *See White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (holding that a consultative examiner's assessment of moderate limitations supported a modified light RFC); *Jordan v. Comm'r of Soc. Sec.*, No. 16-cv-9634 (KHP), 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018) (citing cases and stating that courts in this circuit "have found that 'moderate' limitations for standing, walking, sitting, and lifting are consistent with the ability to do light work"). Thus, while the ALJ did not discuss this earlier opinion from Dr. Glover, Plaintiff has failed to show that it was more restrictive than the ALJ's RFC finding, which was his burden to show. *Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found).

The ALJ also considered the June 6, 2018 opinion of treating chiropractor Dr. Kurbs. Tr. 17. Dr. Kurbs opined that Plaintiff can rarely hold 10 pounds, can walk for no more than two hours in an eight-hour workday, and can sit for no more than four hours in an eight-hour workday. Tr. 759. The Court first notes that, as a chiropractor, Dr. Kurbs, was not an acceptable medical source under the applicable regulations, whereas Dr. Brauer and Dr. Glover, as medical doctors, were acceptable medical sources. 20 C.F.R. §§ 404.1502, 416.902 (chiropractors not included in list of acceptable medical sources for claims filed before March 27, 2017). Under the regulations, only "acceptable medical sources" can provide "medical opinions" *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The ALJ nevertheless considered Dr. Kurbs's opinion and explained that she gave

it little weight because it was contradicted by the other opinion evidence in the record, including the opinions of Dr. Brauer and Dr. Glover, and because it was entirely inconsistent with the objective medical evidence, showing largely benign findings, as set forth above. Tr. 17, 406-07, 617, 622, 958, 1063-64, 1070, 1079, 1107, 1110. Thus, it was appropriate for the ALJ to find that the opinions of Dr. Brauer and Dr. Glover merited more weight, particularly in a case, such as this, where their opinions were also more consistent with the record as a whole.

Plaintiff again faults the ALJ for not discussing every opinion from Dr. Kurbs, in particular, an opinion dated June 13, 2018—just one week after the opinion discussed above. *See* ECF No. 19-1 at 26 (citing Tr. 837). In the later opinion, Dr. Kurbs indicated that Plaintiff was not limited in walking, sitting, and standing but was very limited in lifting/carrying and pushing/pulling. Tr. 837. As an initial matter, Dr. Kurbs' June 13, 2018 opinion about Plaintiff's abilities to sit, stand, and walk provides further support for the RFC finding, and is actually less restrictive than the June 6, 2018 opinion discussed above. *Compare* Tr. 759 *and* 856. Additionally, Dr. Kurbs' opinion that Plaintiff was very limited in lifting and carrying did not explain with much specificity how much plaintiff could lift and carry, although it contains a somewhat illegible notation that appears to indicate 10 pounds. Tr. 823. In any event, the June 6, 2018 opinion was more specific overall and indicated that Plaintiff could lift 10 pounds, albeit rarely. Tr. 759. Furthermore, the more specific June 6, 2018 opinion was addressed by the ALJ, and, as previously discussed, the ALJ provided good reasons for not according that opinion much weight. Tr. 17. Thus, Plaintiff has once again failed to show that he was harmed because the ALJ did not address the less restrictive and less specific opinion of his chiropractor from June 13, 2018, an opinion that in many respects provides support for the ALJ's RFC finding.

Plaintiff also faults the ALJ for not discussing the April 24, 2017 opinion of his PCP, Dr. Bauers. *See* ECF No. 19-1 at 26 (citing Tr. 775). However, Dr. Bauers assessed that Plaintiff had no limitations in sitting, standing, and walking, and only moderate limitation in lifting/carrying and pushing/pulling, climbing, and using his hands. Tr. 775. As discussed above, mild to moderate limitations do not preclude light work. *Jordan*, 2018 WL 1388527, at *10. Accordingly, Plaintiff has failed to show that Dr. Bauers' opinion is more physically restrictive than the ALJ's RFC finding.

Finally, Plaintiff faults the ALJ for overlooking the July 5, 2018 opinion of NP Gross. *See* ECF No. 19-1 at 25 (citing Tr. 861-64). However, although NP Gross completed a Physical Residual Functional Capacity Questionnaire (Tr. 861-67), he elected not to provide an opinion about Plaintiff's physical functional abilities (Tr. 862-64), instead writing "See attached physical therapy and chiro notes" (Tr. 862). However, nothing in those treatment notes provided a specific assessment of Plaintiff's physical functional abilities. Tr. 865-67. Furthermore, one of the treatment notes shows that Plaintiff exercised by walking every day which provides some support for the ALJ's RFC finding of light work. Tr. 865. *See Serra v. Sullivan*, 762 F.Supp. 1030, 1034 (W.D.N.Y. 1991) (finding that RFC for medium work was supported by treatment notes showing improvement after surgery and by a treating doctor's statement that plaintiff could resume a "normal lifestyle with an exercise program"); *see also Steve B. v. Comm'r of Soc. Sec.*, No. 2:18-CV-89-JMC, 2019 WL 1123065, at *1 (D. Vt. Mar. 12, 2019) (treatment record showing that plaintiff engaged in vigorous physical activity, including walking for exercise, supported an physician's assessment of medium work).

In summary, the additional assessments that the ALJ did not explicitly discuss do not show that Plaintiff was more restricted physically than assessed by the RFC, and the Court finds that the

ALJ's physical RFC finding is supported by substantial evidence, including the opinions of Dr. Glover, Dr. Brauer, the treatment records showing conservative treatment and modest findings, and Plaintiff's wide range of daily activities, as discussed above.

Plaintiff's challenges to the ALJ's mental RFC finding fail for similar reasons. Upon review, the Court finds that the mental RFC is supported by treatment records, Plaintiff's activities of daily living, and multiple medical opinions, including an opinion from Plaintiff's own therapist. Starting with the treatment records, the ALJ noted that Plaintiff's mental status findings were consistently normal, revealing that his memory was intact (Tr. 1067, 1070, 1073, 1076, 1101); his concentration was fair, good or grossly intact (Tr. 884, 887, 1067, 1070, 1073, 1076, 1101); and his attitude and affect were cooperative or pleasant (Tr. 884, 887, 1067, 1070, 1073, 1076, 1101). Tr. 16. The ALJ also noted that Plaintiff's treating sources routinely indicated that his mental health impairments were "stable," "related to situational stress," and only mild-to-moderate in severity. Tr. 16 (citing Tr. 887, 883, 1068, 1069, 1108). Deficits in mental health brought on by situational stress are not necessarily disabling. *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 83-84 (2d Cir. 2015) (finding that behaviors precipitated by situational factors rather than longitudinal manifestations of psychological disorders belied the presence of totally disabling functional limitations); *Morgan v. Colvin*, No. 6:14-cv-0549 (LEK), 2016 WL 3527907, at *15 (N.D.N.Y. June 23, 2016) (situational stressors are not a basis for a finding of disability).

The ALJ also pointed out that Plaintiff himself acknowledged that his mental health symptoms were alleviated with prescription medication, and he declined to engage in mental health counseling. Tr. 16-17 (citing Tr. 1069, 1072). As noted above, improvement with treatment is a proper factor for the ALJ to consider in determining disability. *Reices-Colon*, 523 F. App'x at 799; *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other

treatment on a claimant's ability to function).The ALJ also noted that, throughout the record, Plaintiff reported to treating sources that his treatment was effective; he was able to focus better with medication; his mental health symptoms were improving; and his memory and concentration were "good." Tr. 17 (citing Tr. 883, 886, 1069 1078). The ALJ also considered Plaintiff's extensive activities of daily living, as recited above, noting that these activities showed that Plaintiff was "high-functioning" which undermined his allegation of disability based on a mental impairment. Tr. 17. Thus, the ALJ reasonably concluded that Plaintiff's activities demonstrate that he could perform simple tasks, interact sufficiently with others, and adapt to routine stressors of daily life.

The ALJ also considered the opinion evidence about Plaintiff's mental functioning and incorporated those opinions that were consistent with the record as a whole into the RFC finding. Tr. 17-18. For example, the ALJ incorporated Dr. Glover's June 20, 2028 opinion that Plaintiff was capable of only low-stress jobs by restricting him to low-stress work. Tr. 17-18, 765. Dr. Glover did not identify any other mental limitations in his June 20, 2018 opinion. Tr. 762-65. Although Plaintiff faults the ALJ for not explicitly discussing an earlier opinion from Dr. Glover dated January 2, 2018 (Tr. 840), in that opinion, Dr. Glover assessed that Plaintiff had, at most, moderate limitations in mental areas, such as understanding instructions, relating with others, and functioning at a consistent pace. Tr. 841. Thus, the opinion indicates that Plaintiff can do unskilled work, the type of work to which the ALJ restricted Plaintiff. *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014) (finding that moderate limitation in maintaining concentration, persistence, or pace or in relating with others did not preclude unskilled work); *Zabala*, 595 F.3d at 409 (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in her work-related functioning); *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (moderate limitations in different work-related areas were reasonably found to not preclude

unskilled work). Thus, while the ALJ did not discuss Dr. Glover's earlier opinion, Plaintiff has once again failed to show that it was more restrictive than the ALJ's RFC finding.

The ALJ also considered and gave significant weight to the opinions of psychiatric consultative examiner Susan Santarpia, Ph.D. ("Dr. Santarpia") (Tr. 410-13), and state agency psychologist C. Butensky, Ph.D. ("Dr. Butensky") (Tr. 112-13). Tr. 18. As the ALJ noted, Dr. Santarpia opined that Plaintiff's mental health limitations were not significant enough to interfere with his ability to function on a daily basis and assessed no specific work-related limitations as a result of his mental health impairments (Tr. 412-13), and Dr. Butensky assessed no more than mild mental health limitations and did not assess any specific work-related limitations (Tr. 112-13). Tr. 18. The ALJ explained that she gave great weight to the assessments of Drs. Santarpia and Butensky because they were mutually supportive of each other and consistent with the medical record as a whole. Tr. 18. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Nonetheless, the ALJ acknowledged Plaintiff's subjective complaints and incorporated additional limitations into the RFC finding, namely restricting Plaintiff to simple, repetitive jobs that were low in stress. Tr. 14.

The ALJ also gave significant weight to the similar opinion of PA Groth, Plaintiff's therapist, which does not show any more restrictions than assessed by the ALJ. Tr. 18, 857-59. Specifically, on July 9, 2018, PA Groth opined that Plaintiff had no serious mental health limitations for the workplace and assessed Plaintiff as being capable of being engaged in full-time competitive employment on a sustained basis. Tr. 857-60. The ALJ also considered PA Groth's assessment that Plaintiff was "vulnerable to self-diagnosis" and "possible exaggeration or inflammation of somatic or cognitive limitations." Tr. 18, 859. Although Plaintiff faults the ALJ for not discussing an earlier opinion from PA Groth dated December 13, 2017 (*see* ECF No. 19-1 at 26), that opinion assessed Plaintiff with no limitation in understanding or carrying out

instructions, making simple decisions, interacting with others, maintaining socially appropriate behavior, and maintaining basic standards of hygiene; and only moderate limitations in maintaining attention and concentration and in functioning in a work setting at a consistent pace (Tr. 849). As previously explained, opinions of "no limitation" or "moderate limitations" do not preclude unskilled work. *See McIntyre*, 758 F.3d at 150-51; *Calabrese*, 358 F. App'x at 277. PA Groth also stated that plaintiff needed to avoid high stress (Tr. 849), which, as discussed, the ALJ incorporated into the RFC finding. Tr. 13. Thus, PA Groth's December 13, 2017 opinion provides additional support for the ALJ's mental RFC finding.

Plaintiff also complains that the ALJ failed to discuss the April 24, 2017 opinion of PCP Dr. Bauers. *See* ECF No. 19-1 at 26 (citing Tr. 775). Dr. Bauers opined that Plaintiff was very limited in interacting appropriately with others and functioning in a work-setting at a consistent pace and was only moderately limited in the remaining areas. Tr. 775. Dr. Bauers also stated that Plaintiff's identity disorder caused him to be very limited and unable to work consistently. Tr. 775. With respect to the portion of Dr. Bauers's opinion assessing moderate limitations, as noted previously, moderate limitations do not preclude unskilled work, the type of work to which the ALJ restricted Plaintiff. As for the remainder of the opinion, Dr. Bauers did not define what he meant by "very limited," but seemingly that means something more than moderate. However, a claimant with a more-than-moderate limitation (such as a marked limitation) in performing a work-related function is not necessarily precluded from performing that function. *Miller v. Berryhill*, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *5 (W.D.N.Y. Sept. 20, 2017) (consultative examiner's opinion of a moderate-to-marked limitation in the ability to deal with stress does not necessarily mandate a conclusion of disability); *see also Fiducia v. Comm'r of Soc. Sec.*, No. 1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) (marked limitation in interacting with

others does not establish that the claimant is disabled, particularly because the ALJ limited the claimant to occasional interaction with others). Thus, the fact that Dr. Bauers opined that Plaintiff was very limited in a function does not mean that he could not perform that function. Thus, this does not undermine the ALJ's RFC finding.

While the ALJ did not specifically discuss Dr. Bauers' opinion, it appears that she took into account those "very limited" restrictions as well. For example, by restricting Plaintiff to work that was low in stress and did not require more than occasional changes in a work setting, the ALJ accounted for Dr. Bauers's finding that Plaintiff was very limited in working at a consistent pace. Tr. 14, 775. Likewise, by restricting Plaintiff to unskilled work, the ALJ also reasonably accounted for the limitation Dr. Bauers assessed in Plaintiff's ability to interact with others. *See* SSR 85-15, 1985 WL 56857 *4 (explaining that unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people."). There is no evidence showing that Plaintiff had additional limitations in interacting with others beyond the restriction to unskilled work. Plaintiff was always cooperative, pleasant, or even "friendly" during examinations with his various practitioners, including Dr. Bauers and his colleagues (Tr. 457, 460, 463, 884, 887, 1067, 1070, 1073, 1076, 1101). Moreover, Plaintiff's ability to work in a retail game store and manage a gas station—jobs that would seemingly require him to interact with others—as well as his ability to volunteer at his church and lead a youth group, supports a finding that Plaintiff was not precluded from interacting with others or keeping on pace. Thus, the ALJ reasonably did not include any additional limitations.

Plaintiff also complains that the ALJ failed to discuss the July 5, 2018 opinion of NP Gross. *See* ECF No. 19-1 at 26 (citing Tr. 861-64). However, NP Gross did not provide an opinion about plaintiff's functional abilities, other than to conclusorily state that Plaintiff was incapable of even

low-stress jobs and his symptoms constantly interfered with his attention and concentration. Tr. 862. As previously discussed, the ALJ accounted for Plaintiff's difficulties with stress by restricting him to low-stress work, defined as requiring no more than occasional decision-making and no more than occasional changes in a work setting. Tr. 14. The ALJ also accounted for Plaintiff's difficulties with concentration by restricting him to work that was simple, repetitive and entailed only one or two-step tasks. Tr. 14. Based on the evidence as a whole, the ALJ reasonably concluded that while Plaintiff may have had some difficulties with concentration and handling stress, he could do simple, low-stress work.

In summary, the additional assessments that the ALJ did not explicitly discuss do not show that Plaintiff was more restricted by his mental impairments than assessed by the RFC, and the Court finds that the ALJ's mental RFC finding is supported by the opinions of Dr. Glover, PA Groth, Dr. Santarpia, and Dr. Butensky; as well as by Plaintiff's treatment notes showing benign findings and his wide range of daily activities.

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.); While the ALJ may not have discussed every medical opinion contained in this voluminous 1,234-page administrative record, the additional opinions that the ALJ did not discuss do not establish that Plaintiff had limitations beyond the limitations the ALJ already included in the RFC finding. The ALJ's decision and the evidence of record permits the Court to glean the ALJ's rationale for finding that Plaintiff was not disabled, and therefore, remand is, not warranted. *See Gladney v. Astrue*, No. 12-cv-6423P, 2014 WL 3557997, *10 (W.D.N.Y. 2014) (even where

ALJ could have more fully articulated the basis for his conclusion, any such failure was harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision).

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault*, 683 F.3d at 448 (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the objective medical findings, the medical opinions, and Plaintiff's activities of daily living, and the ALJ's finding that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Court finds no error.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 19) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 20) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter

judgment and close this case.

      **IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE